**LAW OFFICES**

**JORDAN G. ZEITZ**

18 WEST FRONT STREET
MEDIA, PENNSYLVANIA 19063
(610) 565-9650
FAX (610) 565-9651

JORDAN G. ZEITZ
CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS
A CRIMINAL TRIAL ATTORNEY
---------
MEMBER OF PENNSYLVANIA
AND NEW JERSEY BAR

NEW JERSEY OFFICE
38 HADDON AVENUE
HADDONFIELD, NJ 08033
(856) 795-6660
-------
PLEASE REPLY TO:
PENNSYLVANIA OFFICE

August 12, 2025

**VIA ECF**
Hon. Chad F. Kenney
United States District Court – Eastern District of Pennsylvania

    Re:    <u>**United States v. James Sessoms**</u>
            **Criminal No. 24-370**

Dear Judge Kenney:

Defendant James Sessoms hereby requests that the Court impose an aggregate (total) sentence of "time served" with a focus towards supervised release because he is a 60 year old man who has lived most of his adult life as a law abiding citizen and who is committed to living the remaining years of his life as such a citizen again.

**Guidelines**

Mr. Sessoms disagrees with the guideline range as calculated by the Probation Department as to its finding that there should be an upward adjustment for "more than 10 victims" and for an "aggravated role" as well as for its failure to find a downward adjustment under §4C1.1.

With respect to the upward adjustment for "more than 10 victims" (¶45), the Pre-Sentence Report ("PSR") references "at least 67 personal victims (seven victims of charged conduct and 60 victims of relevant conduct) – plus the government victim agencies" as the basis for this adjustment which is at odds with footnote 6 of the PSR where it acknowledges that only "seven identities belonged to real individuals" and is at odds with plea agreement where no such adjustment was identified or sought in the stipulations.

With respect to the upward adjustment for an "aggravating role" (¶48), the PSR asserts that Mr. Sessoms should be considered an "organizer" because he allegedly

provided "the knowledge, material, stolen PII, and direction to Pinkett and Whitaker to commit the fraud scheme". The basis for this assertion appears to be ¶29 of the PSR which states that Mr. Sessoms allegedly "taught and directed Pinkett and Whitaker (charged and sentenced in related cases) in committing th[e] fraud scheme". However, Mr. Sessoms never admitted to teaching or directing these individuals; the Government's change of plea memorandum dated 4-22-25 makes no mention of Mr. Sessoms teaching or directing these individuals; these individuals also used – per the PSR – fraudulent documents they apparently obtained from sources other than Mr. Sessoms; and there is nothing in the PSR that these individuals ever provided anything of value to Mr. Sessoms thereby making them more akin to associates or co-equal participants. Moreover, the lack of an "aggravating role" is supported by the fact that this adjustment was not identified or sought in the stipulations of the plea agreement.

Because Mr. Sessoms does not believe there is a factual and legal basis supporting the "aggravated role" in ¶48 and because his "total criminal history score is zero" per ¶62, he believes he should receive a downward adjustment of 2 points under §4C1.1 as he satisfies all ten (10) factors[1] referenced therein.

Accordingly, if the collective +4 points under ¶¶45 and 48 are removed and -2 points under §4C1.1 are added based on the foregoing arguments, then the new "Total Offense Level" under ¶54 would be 18. With a criminal history category of I, the guideline range would be **27 to 33 months**.

## Departures

Mr. Sessoms is not moving for any departures.

## Statutory Factors

This Court's statutory duty at sentencing is to determine and impose the punishment which is "sufficient, but not greater than necessary" to achieve the various purposes of criminal justice in the case at hand. 18 U.S.C. §3553(a). The Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), as explained and reinforced in Rita v. United States, 551 U.S. 338 (2007), makes that judgment readily available without the need to justify any "departure" from the U.S. Sentencing Guidelines. This Court must not

---

[1] (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

employ any presumption that a Guideline sentence is appropriate. Rita, 551 U.S. at 346. Instead, no sentence can lawfully be imposed unless a lesser punishment would not be "sufficient" to accomplish the legitimate purposes of criminal sentencing as applied to the defendant's particular case. Id.; 18 U.S.C. §3553(a). Section 3553(a), which now governs federal sentencing to the exclusion of §3553(b), sets forth nearly a dozen factors (grouped in seven subsections) which this Court must "consider." For Mr. Sessoms, the "minimally sufficient" penalty would be a sentence of "time served" with a focus towards supervised release. See United States v. Serafini, 23 F.3d 758, 776 (3d Cir. 2000); United States v. Kikumura, 918 F.2d 1084, 1111 (3d Cir. 1990)).

Other statutory sections also give this Court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation". Further, under 18 U.S.C. §3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. §5H1.

Applying these statutory factors together with the Booker and Rita decisions in this case, the "minimally sufficient" penalty for Mr. Sessoms would be an aggregate (total) sentence of "time served" with a focus toward supervised release.

### The Nature and Circumstances of the Offense

While Mr. Sessoms took, and continues to take, full responsibility for the crimes to which he pled, he did not commit these crimes to live a lavish lifestyle but rather to maintain his largely nomadic and modest lifestyle when other sources of legitimate income (such as participating in clinical drug trials or repairing computers) dried up. See ¶¶86, 87, and 89 of the PSR.

Moreover, Mr. Sessoms did not fully realize the magnitude of his conduct until he received the indictment and underlying discovery as he personally received only a one-time payment for each SNAP account he created and later sold to Parmenio Almonte (¶21 of the PSR) where he (Mr. Sessoms) expected the accounts to be quickly shut down (terminated) because the information he used to open them was so patently bogus. Put differently, Mr. Sessoms did not realize Mr. Almonte would be able to continue to receive – for several months and up to several years – recurring SNAP payments on each account.

Nevertheless, Mr. Sessoms understands that his conduct ultimately contributed not only to the relatively meager payments he wrongfully received for selling SNAP cards to Mr. Almonte but also to the substantial payments Mr. Almonte and others received. He

deeply regrets that he lost his moral compass which in turn created a financial loss to programs which are vital to bona fide recipients such as himself.

## History and Characteristics of the Defendant

Mr. Sessoms is currently 60 years old[2]. He has 5 children who he had maintained contact with up until his arrest in this matter. ¶83, ¶94, and footnote 14 of the PSR. He separated from their mother in the late 1990s due to her substance abuse and repeated relapses issues which left him as a single parent for at least 2 years. ¶85. Like his estranged wife, Mr. Sessoms had his own issues with sobriety where he later left New York and "roamed the country for years, taking various jobs, [and] participating in clinical trials for drug development" which "kept [him] sober". ¶86. He later returned to New York where he was injured in the 9-11 attacks, spent 11 days in the hospital, and attempted to join the military but was rejected for being too old. ¶¶87 - 88.

About a decade after being injured in the 9-11 attacks and living a law abiding life for nearly 50 years, Mr. Sessoms settled in Wisconsin where be began working in the computer repair industry and where he first learned how to make false ID cards. ¶89. Thereafter, Mr. Sessoms was "in the shelter system for over a decade" where he "had **relapsed with [ ] cocaine again**"[3] and where he had "met a friend in the shelter system in Philly [who] turned [him] on to the food stamp fraud." ¶90 (bold emphasis added).

Since he has been incarcerated in this matter, Mr. Sessoms "has not incurred any disciplinary infractions at FDC Philadelphia" (¶9) which supports a finding that he poses a low risk of recidivism.

## Avoiding Unwarranted Sentencing Disparaties

According to the PSR, there are two co-defendants who appear to be similarly situated[4] to Mr. Sessoms and who have now been sentenced[5]:

---

[2] Daniel Glaser, *Effectiveness of a Prison and Parole System* 36 - 37 (1964); P.B. Hoffman & J.L. Beck, "Burnout – age at release from prison and recidivism, "12 J.Crim.Just. 617 (1984) (all scholarly studies for the past several decades have concluded that the risk of recidivism falls off rapidly after age 40).

[3] His extensive drug use – starting with marijuana use at age 13 and later using cocaine (powder and crack) at age 17 – is recited in ¶¶102 thru 105 of the PSR.

[4] Pursuant to 18 U.S.C. §3553(a)(6), the sentencing court should "avoid unwarranted sentence disparaties among defendants with similar records who have been found guilty of similar crimes."

[5] The information referenced below is based on the publicly available information contained on the respective docket sheets of each co-defendant which was limited as most of the potentially relevant information was sealed with the exception of the sentencing memorandum filed on behalf of Mr. Whitaker.

1. <u>George Pinkett</u> (¶11) – plead guilty to 1 count of SNAP fraud, 13 counts of making false statements, and 18 counts of social security fraud and received a sentence of **3 years probation**.

2. <u>Joseph Whitaker, Jr.</u> (¶12) – plead guilty to 1 count of SNAP fraud, 21 counts of making false statements, and 21 counts of social security fraud and received a sentence of **5 years probation**[6].

Based on the foregoing, both Mr. Pinkett and Mr. Whitaker were charged with and ultimately convicted of more offenses than Mr. Sessoms. While Mr. Pinkett's guideline range and criminal history category are not publicly available, Mr. Whitaker's guideline range (51-63 months) is the same range the PSR currently estimates for Mr. Sessoms and his criminal history category (V) is five levels higher than Mr. Sessoms criminal history category of I (¶62 of PSR).

Accordingly, Mr. Sessoms believes the appropriate balance to strike under §3553(a)(6) would be a sentence of "time served" with a focus toward supervised release where the imprisonment term would satisfy the §3553(a)(2) (the need to provide just punishment) and (a)(3) (the need for deterrence) factors and where the supervised release term (which would be similar to the probationary term imposed on the similarly situated co-defendants) would satisfy the §3553(a)(1) (the history and characteristics of Mr. Sessoms) and (a)(4) (the need for Mr. Sessoms to receive other correctional treatment) factors.

## Conclusion

This Court should impose an aggregate (total) sentence of "time served" with a focus on supervised release for the reasons set forth above.

Respectfully yours,

JORDAN G. ZEITZ

JGZ
cc: AUSA Megan Curran (w/encl. + via ECF and email)
PO Elizabeth Powell (w/encl. + via email only)
James Sessoms (w/encl. + via regular mail only)

---

[6] According to his sentencing memorandum dated 12-12-22, the PSR "accurately calculate[d] the advisory guidelines range at **51-63 months**" based on a "**total offense level 18**" with a criminal history "**category V**". Pages 3-4 (Bold Emphasis Original).